**E–C TAPES, INCORPORATED, a corporation, Plaintiff,**

**v.**

**Clarence M. KELLY, Director of the Federal Bureau of Investigation, et al., Defendants.**

**No. 75 C 1693.**

United States District Court, N. D. Illinois, E. D.

Sept. 16, 1975.

William J. Nellis and James L. Coghlan, Chicago, Ill., for plaintiff.

Frederick H. Branding and Theodore T. Scudder, III, Asst. U. S. Attys., U. S. Dept. of Justice, Chicago, Ill., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

LYNCH, District Judge.

This cause having come before the Court on Plaintiff's Motion for Preliminary Injunction and for Return of Seized Property; the Plaintiff having appeared personally through its President, David L. Heilman, and its attorneys, William J. Nellis and James L. Coghlan, the Court having heard testimony, June 6, 1975, on behalf of Plaintiff by said President; and the Court having examined the pleadings, exhibits and other documents, having considered the evidence received at the hearing as well as briefs and arguments of counsel for all parties, being fully advised in the premises, and, by an order of June 16, 1975, having denied the Plaintiff's Motion; does now make the following:

## FINDINGS OF FACT

1. Plaintiff's Motion and Complaint seek return of seized property pursuant to Federal Criminal Rule 41(e) and a preliminary injunction pursuant to Federal Civil Rule 65 and 28 U.S.C. 1331(a). (Motion, Complaint, paragraph 1).

2. Plaintiff, since November 17, 1970, has been a Wisconsin Corporation with its principal place of business in Brookfield, Wisconsin. The witness David L. Heilman is, and has been since incorporation, its president and owner of approximately eighty percent of its stock. (Complaint, paragraph 3; Tr. 4–5).

3. Defendants are the Director and two special agents of the Federal Bureau of Investigation, a U.S. agency, each acting in his official capacity at all times mentioned herein. (Complaint, paragraph 5).

4. Plaintiff, since December 26, 1974, has been authorized to do business in Illinois and, since August, 1974, has leased commercial building space near the intersection of Routes 45 and 132 near Lake Villa, Illinois. [Affidavit in Support of Search Warrant, paragraph 1 (hereafter "Aff. paragraph 1"); Complaint, paragraph 3].

5. From late 1971 through May 16, 1975, plaintiff's principal business has been the manufacture, sale and distribution of duplicated sound recordings fixed prior to February 15, 1975; but plaintiff has, since its incorporation, also marketed duty-drawback programs, jewelry, and non-musical recordings of the Bible and "stag" or "party" programs. (Aff.

paragraph 8; Heilman Aff. paragraphs 9, 12; Tr. 6, 42–43).

6. Plaintiff stocked an inventory of six series of recordings, including approximately 1,400 different musical titles. Each was duplicated from recordings purchased by plaintiff on the open market or obtained from private collections. (Aff. paragraph 8; Tr. 10–14).

7. Plaintiff's recordings have been identified in catalogs and labeled with names of the "original artists" who had made each musical title a hit. On May 16, 1975, the inventory included the three recordings: "Young Girl" by Gary Puckett and the Union Gap, "Lodi" by the Creedance Clearwater Revival, and "Question" by the Moody Blues. (Inventory, Pl.Ex. M, attached to Amended Complaint, paragraph 8; Aff., paragraph 5; Tr. 9–10, 57).

8. To the copyright owners of musical compositions used in plaintiff's duplicate recordings, plaintiff has tendered checks. The checks purported to make royalty payments in compliance with the compulsory licensing provision of the Copyright Statute, 17 U.S.C. § 1(e). Each check bore the words "E–C Tape Service, Publishers and Artists, Statutory Royalty Account", although plaintiff never signed licenses with any artists. (Pl.Ex. 9; Complaint, paragraph 14; Tr. 58).

9. Since about 1973, plaintiff's president has been aware of Federal Court decisions ruling that the statutory license is not available to duplicators of musical recordings. Subsequently, its president also has learned that twenty-six states have enacted laws prohibiting the type of duplicate recording business conducted by plaintiff. (Tr. 52–54, 58).

10. Plaintiff admits that he has not been formally licensed to use musical compositions by any large copyright owner. Plaintiff names only three small independent copyright owners from which it claims any license to use any of the 1,400 titles carried in its inventory. No evidence is provided that plaintiff has been authorized to use any particular copyrighted musical composition. (Aff. paragraphs 6, 7; Tr. 60–61).

11. Beginning as early as 1973, plaintiff has received more than a dozen letters of protest from composition owners, demanding that plaintiff "cease and desist" use of their copyrighted music. One such letter was written July 11, 1974, by Malcolm Bernstein for Jondora Music, Division of Fantasy Records, owner of the above-mentioned composition, "Lodi". Plaintiff has never complied with such demands. (Aff., paragraph 6; Tr. 46–49).

12. Legal actions have been filed against plaintiff by recording companies in New York, Los Angeles, Milwaukee, and Chicago. Injunctions were granted prohibiting further use of certain copyrighted music in New York, California and Wisconsin. Plaintiff now requires that customers in those three states provide out-of-state forwarding addresses. Twice plaintiff has been fined $500.00 for sending tapes directly into California in violation of the California injunction. (Tr. 7–8, 50–51, 63–64).

13. On December 31, 1974, the Copyright Statute was amended to increase the maximum penalties for criminal copyright infringement. (Pl. 93–573, 88 Stat. 1873).

14. On March 7, 1975, plaintiff filed Civil Action No. 75 C 117 in the United States District Court for the Eastern District of Wisconsin, seeking to enjoin criminal prosecution of its business by Federal authorities. On April 28, 1975, that court rendered its decision denying plaintiff the relief requested. (Aff., paragraph 8; Tr. 68–69).

15. Between March 12 and May 15, 1975, defendants Burg and Dorger conducted an investigation during which they learned of packaging activities on plaintiff's leased premises, observed use of an Illinois licensed truck to transport packages from the leased premises to the Lake Villa Post Office, and traced one shipment of recordings of the three above-mentioned compositions ("Lodi", "Young Girl", and "Question") to a customer, John M. Stolz. Defendants also learned that Mr. Stolz had ordered a series of sixteen recordings from plaintiff,

for which he had paid $92.00. (Aff., paragraphs 1–5).

16. Defendants also obtained information from owners of the three above-named compositions that each had been copyrighted, but that no licenses were granted which would permit use by plaintiff of any of those compositions. (Aff., paragraphs 6, 7).

17. On May 15, 1975, a Search Warrant was issued authorizing defendants Burg and Dorger to search plaintiff's leased premises. Seizure was limited to copyrighted musical recordings, including duplications of the three above-mentioned compositions, and all business records and containers related thereto. (Pl.Ex. 2; Complaint, paragraphs 6, 7).

18. On May 16, 1975, defendants Burg and Dorger executed the Search Warrant, seizing, removing and inventorying approximately 20,000 recordings. Those included numerous tape and phonograph recordings of the three above-named compositions, plus many others; one copy each of certain "stag" or "party" recordings; business records and containers. It did not include jewelry, sales records prior to April, 1975, any motor vehicle, or other non-musical recordings. (Inventory, *supra;* Complaint, paragraph 8; Tr. 42–43).

19. Retail prices listed in plaintiff's catalogs for each recording ranged from $4.77 to $6.98. (Pl.Ex. 3; Tr. 9).

20. David L. Heilman, plaintiff's president, was present during part of the search and was given a copy of the Search Warrant. Later, he also received from defendants Burg and Dorger a copy of the inventory, a box of mail, and copies of business records which had been seized. (Tr. 6–7, 56).

21. The tape recordings marketed by plaintiff and seized by defendants are fungible items. All duplicate copies of a given title are identical, without individual serial numbers or other means of individual identification. (Pl.Ex. 4; Tr. 11, 52–53).

## CONCLUSIONS OF LAW

1. The court has jurisdiction of the parties and subject matter of this cause of action under Federal Criminal Rule 41(e), Civil Rule 65, and Title 28, United States Code, Section 1331(a) and 1391(e).

2. No emergency requiring extraordinary preliminary injunctive relief is presented by plaintiff's Motion, coming two years after protests by copyright owners, and injunction decrees entered in other jurisdictions against plaintiff.

3. No public interest would be served by granting a preliminary injunction, based on legal precedent and recent amendment of the Copyright Act by Congress. *Heilman v. Levi,* 391 F.Supp. 1106 (E.D.Wis., 1975)

4. Plaintiff has failed to prove that it has been authorized to duplicate any copyrighted musical composition. Several demands by composition copyright owners that plaintiff cease duplication of music have been disregarded, including a demand by Jondora Music covering the composition "Lodi".

5. No compulsory license is made available to plaintiff for duplication of pre-recorded performances of copyrighted music compositions by Section 1(e) of the Copyright Act, Title 17, United States Code. *Heilman, supra; Duchess Music Corp. v. Stern,* 458 F.2d 1305, 1308–09 (9th Cir. 1972), *cert. denied sub nom.* 409 U.S. 847, 93 S.Ct. 52, 34 L.Ed.2d 88.

6. Probable cause that the crime of copyright infringement had been and was being committed in connection with the premises near Lake Villa, Illinois, leased by plaintiff was demonstrated in the Search Warrant and supporting Affidavit of defendant agent Dorger issued May 15, 1975. *Heilman, supra,* (cited for establishing criminal liability in *A & M Records, Inc. v. MVC Distributing Corp.,* (Civil No. 4–72136, E.D.Mich., May 22, 1975) at p. 3 note 2).

7. No misrepresentation of a material fact or deliberate misrepresentation by any government agent in connection with the Search Warrant and supporting

affidavit has been established. *United States v. Carmichael,* 489 F.2d 983, 988 (7th Cir. 1973).

8. The goods to be seized were described in the Search Warrant with sufficient particularity under the circumstances. Recordings of copyrighted music marketed by plaintiff are common items of general description, not readily susceptible to individual identification. The business records and containers described were reasonably related to unauthorized duplicates of the recordings described. *Duchess, supra, United States v. Scharfman,* 448 F.2d 1352, 1353 note 1, 1354 (2nd Cir. 1971), *cert. denied* 405 U.S. 919, 92 S.Ct. 944, 30 L.Ed.2d 789 (1972).

9. Defendants Dorger, Burg and other F.B.I. agents had probable cause, after entering the premises pursuant to the Search Warrant, to seize all similar recordings of copyrighted music. They had no probable cause to seize non-musical recordings.

10. The recordings of copyrighted music seized are subject to lawful detention. Plaintiff has failed to bear its burden of proving it is entitled to lawful possession of any seized duplicated recordings of copyrighted music.