**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**David L. HEILMAN,
Defendant-Appellant.**

**No. 79–1301.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 28, 1979.

Decided Feb. 8, 1980.

---

**1134**

Bruce F. Ehlke, Madison, Wis., for defendant-appellant.

Thomas P. Sullivan, U. S. Atty., Barry R. Elden, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, Circuit Judge, WISDOM, Senior Circuit Judge,* and CUDAHY, Circuit Judge.

---

* The Honorable John Minor Wisdom, Senior Circuit Judge of the United States Court of Appeals for the Fifth Circuit, is sitting by designation.

1. A complete revision of the federal copyright law was enacted on October 19, 1976, to become effective January 1, 1978. The crimes charged in the present case were committed under the former law. All citations unless oth-

CUMMINGS, Circuit Judge.

This appeal challenges the validity of the first criminal prosecution for "record piracy" under Section 104 of the Copyright Act (17 U.S.C. § 104). The indictment also contained numerous mail fraud counts (18 U.S.C. § 1341). After a bench trial, defendant was found guilty of 18 of the 26 counts of the copyright offenses; the remaining counts of the indictment were dismissed. Defendant was sentenced to six months' imprisonment and fined $500 on each count, the prison terms to run concurrently and the fines to be accumulated. From the judgment of conviction, the defendant appeals. We affirm.

## I. Factual Background

The facts of this case, set forth in affidavits of defendant and stipulations of the Government and the defendant, are not in dispute. Defendant was the president of E–C Tape Service, Inc. until April 1976. E–C Tape was engaged in the business of producing and marketing anthologies of recorded music at Lake Villa, Illinois, and Brookfield, Wisconsin. To make these records and tapes, the defendant used only copyrighted music that was recorded or "fixed" by others prior to February 15, 1972. Records fixed after that date are not involved in this case. The defendant duplicated commercially available records (usually 45 r. p. m.'s), organized them into anthologies, and sold them by mail order. Two out of sixteen of the holders of copyrights in the duplicated compositions accepted the defendant's tender of a two cent "compulsory license fee" mandated by 17 U.S.C. § 1(e).[1]

In October 1971, Congress amended the copyright law, effective February 15, 1972,

erwise noted are to the law effective prior to January 1, 1978.

At the time of the crimes charged in the indictment the relevant portion of Section 1(e) read:

Any person entitled thereto, upon complying with the provisions of this title, shall have the exclusive right:

\* \* \* \* \* \*

(e) [t]o perform the copyrighted work publicly for profit if it be a musical composition;

and created a copyright interest in sound recordings. 17 U.S.C. § 1(f).[2] Congress also promulgated criminal sanctions for unauthorized duplication of copyrighted sound recordings fixed after February 15, 1972.[3]

The United States Department of Justice took the position that record duplicators who copied recordings made prior to February 15, 1972, would not violate the copyright laws so long as they paid the compulsory license fee. "Copyright Protection of Sound Recordings" (App. 103–104). On January 20, 1975, however, the Department of Justice changed its position and publicly announced a prospective policy to prosecute criminally for copyright infringement those persons who duplicated records fixed prior to February 15, 1972, regardless of payment of the licensing fee.[4] Subsequently, on September 3, 1976, Congress once again amended the scope of 17 U.S.C. § 1(e) to provide that the compulsory license provided for copyrighted musical works would not be available to persons making unauthorized duplications of sound recordings. Section 115(a) of Pub.L. 94–553 (effective October 19, 1976), 90 Stat. 2561 discussed in 5 U.S. Code Cong. and Admin.News (94th Cong. 2d Sess. 1976) pp. 5722–5724.

After the Department of Justice announced its prospective policy change, Heil-

---

and for the purpose of public performance for profit, and for the purposes set forth in subsection (a) hereof, to make any arrangement or setting of it or of the melody of it in any system of notation or any form of record in which the thought of an author may be recorded and from which it may be read or reproduced: Provided, That * * * as a condition of extending the copyrighted control to such mechanical reproductions, that whenever the owner of a musical copyright has used or permitted or knowingly acquiesced in the use of the copyrighted work upon the parts of instruments serving to reproduce mechanically the musical work, any other person may make *similar use* of the copyrighted work upon the payment to the copyright proprietor of a royalty of 2 cents on each such part manufactured, to be paid by the manufacturer thereof * * * (Emphasis supplied).

2. Prior to this revision in the law the only federal copyright protection extended to musical compositions was limited by the concept of compulsory licensing which compelled a copyright owner to license the use of the copyrighted musical composition to anyone after the copyright owner "used or permitted or knowingly acquiesced in the use" of the copyrighted work in the manufacture of a sound recording. A licensee in turn was required to· pay the copyright owner the royalty of 2 cents per use. The payment of the royalty protected the licensee from further liability to the copyright owner except in the case of "public performance for profit." 17 U.S.C. § 1(e).

3. 17 U.S.C. § 104 read:
§ 104. *Willful infringement for profit*
(a) Except as provided in subsection (b), any person who willfully and for profit shall infringe any copyright secured by this title, or who shall knowingly and willfully aid or abet such infringement, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by imprisonment for not exceeding one year or by a fine of not less than $100 nor more than $1,000, or both, in the discretion of the court: Provided, however, That nothing in this title shall be so construed as to prevent the performance of religious or secular works such as oratorios, cantatas, masses, or octavo choruses by public schools, church choirs, or vocal societies, rented, borrowed, or obtained from some public library, public school, church choir, school choir, or vocal society, provided the performance is given for charitable or educational purposes and not for profit.
Section 101(e) added in 1971 provides that the unauthorized manufacture or sale of a record or tape of a copyrighted musical work constitutes an infringement of the copyright. This provision made the criminal sanctions of Section 104 applicable to those who without authorization manufacture or sell copyrighted discs or tapes fixed after February 15, 1972. See 1 U.S.Code Cong. and Admin.News (92nd Cong. 1st Sess. 1971) pp. 418–419.

4. The new Department of Justice policy was based on recent decisions by four Circuit Courts of Appeals which held in civil cases that record· duplication did constitute copyright infringement. See *Fame Publishing Co., Inc. v. Alabama Custom Tape, Inc.*, 507 F.2d 667 (5th Cir. 1975); *Jondora Music Publishing Co., Inc. v. Melody Recordings, Inc.*, 506 F.2d 392 (3rd Cir. 1974), certiorari denied, 421 U.S. 1012, 95 S.Ct. 2417, 44 L.Ed.2d 680; *Edward B. Marks Music Corp. v. Colorado Magnetics, Inc.*, 497 F.2d 285 (10th Cir. 1974) (*en banc*), certiorari denied, 419 U.S. 1120, 95 S.Ct. 801, 42 L.Ed.2d 819; *Duchess Music Corp. v. Stern*, 458 F.2d 1305 (9th Cir. 1972), certiorari denied *sub nom. Rosner v. Duchess Music Corp.*, 409 U.S. 847, 93 S.Ct. 52, 34 L.Ed.2d 88.

man (the defendant herein) filed a suit in the United States District Court for the Eastern District of Wisconsin for declaratory judgment that his record duplication business did not violate the Copyright Act. He also sought an injunction against any criminal prosecution of him under that Act. On April 28, 1975, Judge Reynolds denied a motion for a temporary restraining order or preliminary injunction. On July 14, 1977, he entered summary judgment against defendant. *Heilman v. Levi,* 391 F.Supp. 1106 (E.D.Wis.1975). This Court affirmed. *Heilman v. Bell,* 583 F.2d 373 (7th Cir. 1978), certiorari denied, 440 U.S. 959, 99 S.Ct. 1499, 59 L.Ed.2d 771.

On March 31, 1977, almost two years after the entry of Judge Reynolds' ruling on the preliminary injunction, this criminal indictment was filed in Illinois alleging that defendant between April 29, 1975, and January 7, 1976, had duplicated and sold certain recordings that had been fixed prior to February 15, 1972, such as "Mack the Knife," without authorization from the copyright owners. The indictment also alleged that mail frauds were committed in connection with the defendant's sales of these records and tapes. The evidence at trial consisted of the Government's stipulation with exhibits, the defendant's stipulation with exhibits, and the testimony of two defense witnesses (Jan. 30, 1979, Tr.). The two witnesses, both counsel who had been consulted by defendant regarding the legality of his record duplication business, testified that they had advised the defendant in 1975 and 1976 that his activities would not violate the criminal provision of the Copyright Act so long as he continued to tender the compulsory license fee and to give notice to the copyright owner (Jan. 30, 1979, Tr. 3–9, 23–26).

Defendant raises these issues on appeal: (1) Are the provisions of the Copyright Act which authorize criminal sanction unconstitutionally vague? (2) Did the defendant willfully infringe copyrights when he was duplicating records but was also complying with the compulsory license provisions of the Copyright Act? and (3) Did the district judge deny defendant equal protection of the laws when he refused to hold a hearing on whether this was an impermissibly selective prosecution?

## II. *Vagueness of Section 104 of the Copyright Act*

■ Under Section 104 of the Copyright Act "any person who willfully and for profit shall infringe any copyright secured by this title" is guilty of a misdemeanor (note 3 *supra* ). Section 101(e) defines infringement of a copyright as including the unauthorized manufacture or sale of a record or tape (*idem* ). Section 101(e) also specifies that the copyright in a musical composition extends to a record or tape of a performance of the written composition, but Section 1(e) provides that once the copyright holder allows a record or tape to be made, anyone may make "similar use" of the composition upon payment of a compulsory license fee (note 1, *supra* ). In sum, a person who makes or sells a record or tape of a copyrighted musical composition without authorization infringes unless the "similar use" exception of Section 1(e) applies.

Defendant claims that the Copyright Act is unconstitutionally vague because it is ambiguous whether his duplication of records fixed prior to February 15, 1972 [5] falls within the "similar use" exception to liability for infringement. On the other hand, the Government contends that this argument of vagueness must fail because unlike the vagrancy ordinance struck down for lack of notice in *Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110, here defendant received notice of the Department of Justice's prospective policy to prosecute record and tape duplicators on the ground that the "similar use" provision did not protect their activities. We agree.

At the time the defendant committed the offenses charged in the indictment, that is,

---

5. As noted above, sound recordings "fixed" after February 15, 1972, are themselves subject to copyright under 17 U.S.C. § 1(f) and are not part of the present controversy which concerns only pre-February 15, 1972, sound recordings.

from April 29, 1975, through January 7, 1976, four circuit courts of appeals and a district court had ruled that record duplicators could not avail themselves of the "similar use" provision of Section 1(e) to avoid a judgment for copyright infringement because "similar use" does not include duplication of original recordings.[6] Public notice was given to the defendant through the trade press. Gov't Ex. 2. Further, the Department of Justice's decision to prosecute was made prospective only (App. 140). That Congress chose in 1976 to clarify its intent with respect to the "similar use" provision does not establish defendant's claim of unconstitutional vagueness nor does it negate the implication that the judicial gloss on Section 1(e) had already provided clear notice of the activity which is forbidden. *Grayned v. City of Rockford*, 408 U.S. 104, 109, 111–112, 92 S.Ct. 2294, 2299, 2300–2301, 33 L.Ed.2d 222. This Court rejected a similar argument with respect to the 1971 amendments in *Heilman v. Bell*, 583 F.2d 373, 376–377, 378 (7th Cir. 1978), certiorari denied, 440 U.S. 959, 99 S.Ct. 1499, 59 L.Ed.2d 771. Indeed in that case we also held that "criminal charges under 17 U.S.C. §§ 101(e) and 104 may [as here] be brought against tape duplicators who have attempted to comply with § 1(e)." 583 F.2d at 377.

### III. *Willful Infringement*

The defendant contends that even if he infringed copyrights in musical compositions, his conviction should be reversed because he was not guilty of a willful violation of the Copyright Act within the meaning of Section 104 (note 3 *supra*). Defendant twice consulted with counsel regarding the legality of his duplication business, once in 1971 shortly after going into business

(App. 101–102), and again following the 1971 amendments to the Copyright Act (App. 102, 127–136). Defendant continued to remit the statutory licensing fee during the times covered by the indictment. Given these good faith efforts to comply with the law, defendant urges that there is insufficient evidence that he willfully violated the Act.

The Supreme Court in *Screws v. United States*, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495, established a two-part test for willfulness. First, the judge must determine that the right at issue is clearly defined. 325 U.S. at 100, 65 S.Ct. at 1035. Second, the jury must determine that the defendant acted with the purpose of depriving the victim of the interest protected by that right. 325 U.S. at 103, 65 S.Ct. at 1036. The purposiveness of defendant's acts necessary to meet the willfulness standard was also described in *United States v. Murdock*, 290 U.S. 389, 394–395, 54 S.Ct. 223, 225, 78 L.Ed. 381, where the Supreme Court further defined "willful".

The word often denotes an act which is intentional, or knowing, or voluntary, as distinguished from accidental. But, when used in a criminal statute, it generally means an act done with a bad purpose * * * without justifiable excuse * * * stubbornly, obstinately, perversely * * * The word is also employed to characterize a thing done without ground for believing it is lawful * * or conduct marked by careless disregard of whether or not one has the right so to act. (Citations omitted).

In determining whether defendant willfully infringed copyrights by continuing his music duplication business from April 29, 1975, through January 7, 1976, the period

6. See cases cited in note 4, *supra*; to the same effect see *Heilman v. Levi*, 391 F.Supp. 1106 (E.D.Wis.1975). Defendant contends that we cannot carry the disposition reached in these five civil cases into the criminal setting of the present case. At oral argument counsel for defendant conceded that except for the requirement of a finding of specific intent the issues in the present case were the same as those in the civil cases but urged that the rules of statutory

construction applicable in a criminal case were more restrictive. No reason has been advanced, however, which would justify this Court's re-evaluating the holdings of the four courts of appeals or of the decision of this Court in *Heilman v. Bell, supra*, that the compulsory license provision of the Copyright Act cannot be used by record and tape duplicators to avoid an infringement action.

covered by the indictment, it is relevant to examine the critical facts known by the defendant. First of all he knew that the musical compositions which he duplicated were copyrighted. He knew that in January 1975 the Department of Justice had announced a prospective policy to prosecute persons who had made and sold pre-February 15, 1972, duplications. He knew that four Circuit Courts of Appeals had ruled in civil cases that such record duplications constituted copyright infringement.[7] Judge Reynolds had refused to grant him a preliminary injunction because the judge considered the Copyright Act to forbid defendant's record duplication activities.[8] Finally, defendant knew that his conduct had been ruled illegal under the laws of New York, California, and Wisconsin.[9]

Under these circumstances it was entirely appropriate for the district court to conclude that defendant had willfully infringed copyrights. With each additional case that was decided, defendant's position that his business did not implicate a copyright violation became less and less tenable. Instead of conforming his conduct to the bounds of the law, defendant chose to persist in conduct which he knew had "a high likelihood of being held by a court of competent jurisdiction to be a violation of a criminal statute" (Feb. 7, 1979, Tr. 7). That is surely sufficient to meet the accepted definitions of willfulness. See, e. g., *United States v. Wise*, 550 F.2d 1180, 1194–1195 (9th Cir. 1977); *United States v. Kaye*, 556 F.2d 855, 863 (7th Cir. 1977), certiorari denied, 434 U.S. 921, 98 S.Ct. 395, 54 L.Ed.2d 277.

**IV. *Selective Prosecution***

 Defendant argues that his motion to dismiss the indictment on the ground of discriminatory prosecution was improperly denied because he had made a *prima facie* case that he was the victim of such a prosecution and therefore an evidentiary hearing was necessary under *United States v. Falk*, 479 F.2d 616, 618, 620–621 (7th Cir. 1973). A *prima facie* case of discriminatory prosecution consists of proof that the defendant had been singled out for prosecution while others similarly situated had not been prosecuted and that the Government's discriminatory selection was based upon an impermissible ground. In his affidavit submitted with his motion to dismiss defendant alleged that between February 1, 1972, and October 31, 1974, the Federal Bureau of Investigation conducted 6,797 investigations of tape piracy but that thereafter the defendant was the only person criminally prosecuted as a tape pirate. Defendant claimed that this prosecution was initiated in retaliation for his criticism of the change in the law with respect to record piracy.[10] However, defendant did not allege that after the Department of Justice announced in January 1975 its prospective policy to prosecute duplicators of records fixed before February 15, 1972, persons other than the defendant impermissibly had duplicated such records and yet had not been prosecuted. Nor did the defendant prove a causal connection between the exercise of his First Amendment rights and his prosecution for record piracy. The mere fact that this investigation was commenced within weeks of defendant's January 5, 1975, criti-

---

7. The four cases were cited in Judge Reynolds' order denying issuance of a preliminary injunction.

8. This order was entered on April 28, 1975, and defendant was notified of the court's decision on April 30, 1975.

 Before defendant committed the acts charged in counts 21–26 of this indictment, Judge Lynch of the Northern District of Illinois had determined that comparable conduct of defendant's company was subject to the criminal provisions contained in Section 104 of the Copyright Act. *E–C Tapes, Inc. v. Kelly*, 412 F.Supp. 245 (N.D.Ill.1975).

9. Gov't. Ex. 5 at 50–58; *E–C Tapes, Inc. v. Kelly, supra*, 412 F.Supp. at 247; *A. & M. Records, Inc. v. Heilman*, 75 Cal.App.3d 554, 142 Cal.Rptr. 390 (1977); *Mercury Record Pro. Inc. v. Economic Consult., Inc.*, 64 Wis.2d 163, 218 N.W.2d 705 (1974).

10. Defendant lobbied in Congress in opposition to the 1976 changes in the scope of Section 1(e) of the Copyright Act and he wrote to the Department of Justice protesting its change in position regarding the scope of the similar use exception.

cism of the Department of Justice's proposed policy change is not sufficient to establish a *prima facie* case for discriminatory prosecution. It is not improper for the Government to concentrate on those violations which appear most flagrant. *United States v. Stout*, 601 F.2d 325, 328 (7th Cir. 1979). As this Court recently stated in that case: "Aggressively displaying one's antipathy to the * * * system or daring the government to enforce it does not create immunity from, or a defense to, prosecution." On the facts contained in the record below we cannot conclude that defendant should have been granted an evidentiary hearing as to whether he was a victim of selective prosecution.

For these reasons, the judgment of conviction is affirmed.