Ronald JARRETT, Petitioner-Appellant,
Defendant-Appellant,

v.

UNITED STATES of America,
Respondent-Appellee,
Plaintiff-Appellee.

Nos. 86–2514, 85–2632.

United States Court of Appeals,
Seventh Circuit.

Argued April 4, 1986.
Decided June 17, 1987.

Louis Carbonaro, Carbonaro & Carbonaro, Chicago, Ill., for Jarrett.

Virginia Junewicz, U.S. Dept. of Justice Organized Crime & Racketeering Sect., Chicago, Ill., for U.S.

Before WOOD, and COFFEY, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

COFFEY, Circuit Judge.

The defendant Ronald Jarrett appeals the district court's order denying his motion to vacate his conviction for armed robbery on the grounds that he was denied effective assistance of counsel at trial. Further, he appeals the denial of his motion for a new trial on the basis of newly discovered evidence which undermined the credibility of one of the State's principal witnesses. We affirm.

I.

In 1978, the FBI and the Department of Justice, Organized Crime and Racketeering Section, Chicago Strike Force, began the "Burgmurs" investigation. The investigation focused on a number of burglaries and subsequent murders of burglars associated with organized crime in Chicago. Ronald Jarrett, the defendant, a known professional criminal allegedly with mob ties, was a suspect in this investigation.

During the summer of 1978, the Chicago Strike Force Special Attorney S. Gay Hugo (Hugo), who was assigned to the special September 1978 grand jury empanelled for the Burgmurs investigation, decided to prosecute Jarrett for a weapons violation unrelated to the Burgmurs investigation. A similar state charge involving the same weapon which gave rise to the federal prosecution had previously been dismissed in a state court for lack of probable cause. The indictment on the weapons charge was returned by the grand jury on April 19, 1979, eight days after Jarrett had appeared before the special September 1978 grand jury established for the Burgmurs investigation and refused to answer questions relating to the Burgmurs investigation on the basis of his fifth amendment privilege against self incrimination. This indictment was dismissed when Jarrett prevailed on a motion to suppress for lack of probable cause on January 30, 1980.

While the weapons violation was still pending, the FBI uncovered new evidence implicating Jarrett in the Burgmurs investigation. In June, 1979, the FBI learned that Jarrett had participated in the robbery of the Orange Blossom jewelry store in Chicago, Illinois on December 15, 1977. Two men who had participated in the robbery with Jarrett verified that Jarrett was a co-conspirator in the Orange Blossom robbery. The two were later granted immunity in exchange for their testimony concerning Jarrett's participation in the Orange Blossom robbery. Based on this new information, the FBI commenced a more in-depth investigation of Jarrett's criminal activity which eventually involved other reputed criminals in the Chicago area.

In August, 1980, the Strike Force and the FBI sought an indictment under the Hobbs Act against Jarrett for his participation in the armed robbery of the Orange Blossom jewelry store. On October 29, 1980, Jarrett was indicted on this charge by the special September 1978 grand jury, the grand jury Special Attorney Hugo was assigned to and the same grand jury before

which Jarrett had earlier invoked his fifth amendment privilege.

Jarrett retained attorneys Matthew Walsh and Matthias Lydon to represent him in the Orange Blossom case. Both the attorneys had a wealth of experience in defending criminal cases in the federal courts. Jarrett, while consulting with the attorneys in the months preceding the trial explained that he felt this prosecution was an effort on the part of the government to punish him for invoking his fifth amendment rights in the Burgmurs grand jury investigation in 1978, stating that shortly after he refused to testify in the Burgmurs investigation, he was indicted on the old gun charge that was subsequently dismissed for lack of probable cause. Jarrett was convinced that this new indictment was a renewal of the government's efforts to punish him for invoking his fifth amendment rights. Walsh and Lydon were aware at this time that two of Jarrett's accomplices in the Orange Blossom burglary were in the witness protection program and were aware that they would in all probability be called to testify against Jarrett.[1]

Walsh and Lydon discussed the possibility of raising a pre-trial motion to dismiss the indictment on the basis of selective and vindictive prosecution, but after due consideration decided they did not have sufficient grounds to pursue the motion. Walsh believed the motion to be unmeritorious and Lydon concluded it would be a waste of time. During the trial, certain facts came forward which altered and changed Walsh's and Lydon's opinion about the merits of the selective and vindictive prosecution motion: the case had been put together a year prior to the indictment, an FBI agent sought the cooperation of Jarrett's accomplices in the Orange Blossom burglary only after Jarrett had refused to cooperate with him, and the immunity granted Jarrett's accomplices was of an extraordinary nature. On the basis of this new information, Lydon informed the court

---

**1.** Jarrett's two accomplices received compensation for their participation in the witness protec- tion program.

he would file a motion later for acquittal on the basis of selective and vindictive prosecution. This motion was filed on December 24, 1980. The motion failed to request relief from waiver "for a cause shown" as is required under Fed.R.Crim.P. 12(f).[2]

Prior to the conclusion of the trial, Jarrett fired Walsh and Lydon and hired substitute counsel. Before sentencing, Jarrett's new attorney filed a motion asserting Jarrett was denied effective assistance of counsel in violation of the sixth amendment and asking for a hearing. The motion failed to set forth the grounds on which Jarrett's claim of ineffective assistance of counsel rested. This was the first time the sixth amendment issue was raised. The district court denied the motion for a hearing on the ineffective assistance of counsel allegation without explanation.

Jarrett then sought appellate review of his claim. On January 21, 1983, the Seventh Circuit affirmed Jarrett's conviction and held that the claim of selective prosecution was waived because it was not raised prior to the trial as required under Rule 12(b)[3], nor had the circumstances of 12(f) allowing the granting of this motion after the trial has commenced been satisfied since the defendant failed to establish sufficient cause for the court to excuse Jarrett's delay in raising the issue. Although Jarrett had raised a claim of ineffective assistance of counsel, the court held this issue was not properly before it.

Jarrett now seeks a review of the district court's orders denying his motion to vacate his conviction on the grounds that he was denied effective assistance of counsel when his attorneys failed to raise the selective and vindictive prosecution motion prior to trial and denying his new trial motion on the basis of newly discovered evidence that a witness who testified against him had ingested drugs on the day she testified.

The Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) articulated the standard under which ineffective assistance of counsel claims are to be evaluated. The Supreme Court held that the "benchmark for judging any claim of ineffective assistance of counsel must be whether counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2064. *Strickland* provided a two-step analysis under which the defendant must show counsel's performance was deficient and that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. Under the first prong of the test, the reviewing court must determine whether trial counsel provided "reasonably effective" assistance considering all the circumstances. The defendant must show that counsel's representation fell below an objective standard of reasonableness. 466 U.S. at 687, 104 S.Ct. at 2064. *Strickland* and the cases following it have made it clear that the defendant has a heavy burden in proving a claim of ineffectiveness of counsel. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. *See also, United States v. Buchbinder,* 796 F.2d 910 (7th Cir.1986). Judicial

**2.** Fed.R.Crim.P. 12(f) reads:

"**(f) Effect of Failure to Raise Defenses or Objections.** Failure by a party to raise defenses or objections or to make requests which must be made prior to trial, at the time set by the court pursuant to subdivision (c), or prior to any extension thereof made by the court, shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver."

**3.** Fed.R.Crim.P. 12(b) reads:

"(b) Pretrial Motions. Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. Motions may be written or oral at the discretion of the judge. The following must be raised prior to trial:

(1) Defenses and objections based on defects in the institution of the prosecution; or

(2) Defenses and objections based on defects in the indictment or information (other than that it fails to show jurisdiction in the court or to charge an offense which objections shall be noticed by the court at any time during the pendency of the proceedings); or

(3) Motions to suppress evidence; or

(4) Requests for discovery under Rule 16; or

(5) Requests for a severance of charges or defendants under Rule 14."

scrutiny of counsel's performance should be highly deferential. Reviewing courts are to presume that counsel's conduct falls within the range of reasonable, professional conduct. "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). Counsel's conduct must be judged in light of all the circumstances as of the time the action was taken and not as a result of hindsight. 466 U.S. at 690, 104 S.Ct. at 2066.

The defendant must demonstrate not only that counsel's performance was professionally unreasonable, but also that it actually prejudiced his or her defense. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S.Ct. at 2068. Thus, under this test, simply demonstrating that counsel's conduct was unreasonable does not establish prejudice to the defendant such that a new trial is required.

Although *Strickland* established a two-step analysis for reviewing ineffective assistance of counsel claims; where it is clear that the alleged deficiency in counsel's performance was not so substantial as to prejudice the defendant it is unnecessary for a reviewing court to determine whether counsel's performance was in fact ineffective. In the absence of any showing of prejudice, the claim should be dismissed without further inquiry into counsel's performance. *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2067. *See also United States v. Buchbinder*, 796 F.2d 910, 917 (7th Cir. 1986) (quoting *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2067); *United States v. Noble*, 754 F.2d 1324, 1355 (7th Cir.1985).

Jarrett's ineffective assistance of counsel claim is based on his counsels' initial waiver of a motion for selective and vindictive prosecution. Jarrett's attorneys waived this motion by failing to present it at the proper time. Rule 12(b) requires that motions for selective and vindictive prosecution must be brought prior to trial or they will be deemed waived. Jarrett's counsel did not make their motion for selective and vindictive prosecution until midway through the trial. The motion failed to address the possibility of waiver.

Analyzing the prejudice prong of the ineffectiveness claim first, it is clear that even if counsel's performance was deficient, Jarrett's defense was not prejudiced because it is unlikely that Jarrett would have been able to establish either a selective or vindictive prosecution claim. As this court previously explained, Jarrett's claim for a vindictive prosecution is completely without merit.

"Although Jarrett also claims vindictive prosecution, this claim fails since vindictive prosecution has as its basis an increase in charges or a new prosecution allegedly brought in retaliation for the exercise of constitutional rights. Here there is a single prosecution, and no increase in the charges. Jarrett apparently wishes to equate his appearance as a witness before the 1978 grand jury with a criminal proceeding against him personally. This, however, is not the type of situation which falls within the parameters of a vindictive prosecution defense. *Buckledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974); *United States v. Wilson*, 639 F.2d 500 (9th Cir. 1981)."

*U.S. v. Jarrett*, 705 F.2d 198, 204, n. 8 (7th Cir.1983). Therefore, Jarrett's counsel's well-reasoned decision not to invoke the vindictive prosecution claim by not raising it before trial did not prejudice Jarrett's defense since we are convinced from our review of the record that Jarrett would have been unsuccessful in his attempt to establish that the government's prosecution of him was vindictive. Since the decision of Jarrett's counsel not to make the vindictive prosecution motion did not prejudice Jarrett's defense, his claim of ineffective assistance of counsel with respect to a

defense of vindictive prosecution fails under the *Strickland* prejudice analysis.

Jarrett also asserts defense counsel's decision to waive the selective prosecution claim as a basis for his claim that he was not provided effective assistance of counsel. However, Jarrett must establish that counsel's waiver prejudiced his defense to establish his claim of ineffective assistance; thus, he must convince us that he could have presented a colorable claim that the government discriminatorily selected him for prosecution. Courts generally are properly hesitant to examine or interfere with the government's prosecutorial discretion whether or not to institute prosecution. The government retains broad discretion in exercising its decision as to whom it prosecutes and when it decides to prosecute. *Wayte v. United States,* 470 U.S. 598, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985). "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his [or her] discretion." *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978).

■■■■ We know of no case law nor have we been furnished with any by Jarrett holding that a defendant is automatically entitled to a hearing on a claim of selective prosecution. *United States v. Heilman,* 614 F.2d 1133, 1138–39 (7th Cir.), *cert. denied,* 447 U.S. 992, 100 S.Ct. 3014, 65 L.Ed.2d 1114 (1980). To obtain an evidentiary hearing on the issue of selective prosecution, a defendant must initially overcome the legal hurdle of establishing " 'a prima facie case based on facts sufficient to raise a reasonable doubt as to the prosecution's purpose.' " *United States v. Jarrett,* 705 F.2d 198, 208 (7th Cir.1983), *cert. denied,* 465 U.S. 1004, 104 S.Ct. 995, 79 L.Ed.2d 228, 1984 (quoting *U.S. v. Falk,* 479 F.2d 616, 620–21 (7th Cir.1973)). Claims of selective prosecution are judged under ordinary equal protection standards. *Wayte,* 470 U.S. 598, 105 S.Ct. 1524. In order to make a *prima facie* case for selec-

tive prosecution, the defendant must establish initially that he was singled out for prosecution while others similarly situated were not prosecuted, and secondly, that the alleged selective decision to prosecute him was based on such impermissible grounds (discrimination) such as race, religion, or exercise of constitutional rights. *U.S. v. Rodriguez,* 803 F.2d 318, 320 (7th Cir.1986); *U.S. v. Mitchell,* 778 F.2d 1271, 1277 (7th Cir.1985).

In our opinion, the facts here are insufficient to "raise a reasonable doubt as to the prosecutor's purpose" since the mere coincidence that the indictment followed shortly after Jarrett refused to testify before the grand jury, standing alone, does not suggest any impropriety on the part of the prosecutor. *Jarrett,* 705 F.2d at 208. The defendant alleges that the government indicted him because of his invocation of his fifth amendment privilege not to self incriminate himself before the grand jury. The mere fact that Jarrett was indicted subsequent to invoking his fifth amendment privileges does not of itself establish "a causal connection between the exercise of his [Fifth] Amendment right and his prosecution." *Heilman,* 614 F.2d at 1138. This fact standing alone is not sufficient, absent some showing of improper prosecutorial purpose, to establish a *prima facie* case of selective prosecution. As the Supreme Court explained in *Wayte,*

> " 'so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.' "

105 S.Ct. at 1531 (quoting *Bordenkircher v. Hayes,* 434 U.S. at 364, 98 S.Ct. at 668).

Jarrett has failed to present any evidence to establish that the special Strike Force attorney who sought Jarrett's indictment for robbery under the Hobbs Act was acting with an improper motive. Indeed, a review of the evidence clearly establishes that the prosecutor had probable cause to believe that Jarrett had in fact participated in the Orange Blossom robbery. The deci-

sion to prosecute Jarrett was based on evidence the government had gathered as part of its extensive Burgmurs investigation and on the statements of Jarrett's accomplices implicating Jarrett in the robbery. Since Jarrett has failed to establish that the decision to prosecute him for his involvement in the Orange Blossom robbery was based on an improper motive, the fact that he was indicted one and one-half years after he refused to testify before the September 1978 grand jury by itself fails to meet the standard required to establish a prima facie case of selective prosecution. The record reveals that the prosecutor had ample evidence to establish probable cause to believe Jarrett had participated in the Orange Blossom robbery.

Because his two accomplices in the Orange Blossom robbery, Ronald Brown and David Willis, were not prosecuted, Jarrett argues that he was "singled out for prosecution." Jarrett argues he, Brown and Willis were also similarly singled out for prosecution. This court explained in *United States v. Heilman*, 614 F.2d 1133, 1138–39 (7th Cir.1980), *cert. denied*, 447 U.S. 992, 100 S.Ct. 3014, 65 L.Ed.2d 1114 (1980), that to establish a prima facie case of selective prosecution, the defendant must demonstrate that he was "singled out for prosecution while others similarly situated had not been prosecuted and that the government's discriminatory selection was based upon an unpermissible ground." As the Supreme Court stated: " 'so long as the prosecutor had probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.' " *Wayte v. United States*, 470 U.S. 598, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978)). However, Jarrett fails to realize he and his accomplices were not similarly situated. Brown and Willis cooperated with the government while Jarrett on the other hand after being given the opportunity to cooperate, refused.

Jarrett also alleged he was singled out for prosecution under the Hobbs Act for a local robbery usually not prosecuted by federal authorities. Jarrett has been unable to present any evidence that others similarly situated would not be prosecuted for a like offense. The district court stated that:

> "[e]ven if the court accepts *arguendo* Jarrett's unsubstantiated claim that there have been no similar prosecutions in this district, he has still not proven that he was unfairly singled out. With a record of some 60 arrests, Jarrett is not, and never has been, a 'run-of-the-mill' criminal. He has made no showing that other dangerous members of organized crime with voluminous records have not been prosecuted for an offense literally within the reach of the Hobbs Act."

(R. 151, at 16).

To establish a prima facie case for selective prosecution, Jarrett must present evidence of improper prosecutorial motive. Here, the record is void of any facts which would establish that Jarrett was prosecuted in the Orange Blossom jewelry store robbery only because of his refusal to testify at the earlier grand jury hearing. Jarrett has failed to make a preliminary showing which, if unrebutted, would directly establish a discriminatory purpose on the part of the prosecution.

The decision of Jarrett's counsel to waive the selective prosecution claim did not prejudice Jarrett's defense since the selective prosecution claim was without merit. We are convinced that Jarrett would have been unable to establish facts sufficient to set forth a prima facie showing of selective prosecution. Accordingly, we believe Jarrett's selective prosecution motion would have in all probability been denied even if had it been timely presented. Since the failure to timely make the selective prosecution motion did not prejudice Jarrett's defense, his claim for ineffective assistance of counsel as to selective prosecution must fail under the *Strickland* prejudice analysis. Jarrett has not demonstrated that the

failure of his counsel to bring the selective and vindictive prosecution motion prejudiced his defense and thus his claim of ineffective assistance of counsel claim must fail. Therefore, Jarrett's failure to establish that his defense was prejudiced makes it unnecessary under the Supreme Court's decision in *Strickland* to determine whether Jarrett's counsel's performance was actually unreasonable. For the purposes of the sixth amendment, Jarrett has received effective assistance of counsel.

Jarrett also alleges nine other errors of counsel which he claims violated his right to effective assistance of counsel. It should be stressed that the sixth amendment does not guarantee Jarrett a perfect attorney, but merely reasonably effective counsel. None of the alleged errors reaches the level of prejudice required under *Strickland.* Because these errors did not prejudice his defense, we hold Jarrett's sixth amendment rights have not been violated.

Jarrett also seeks a new trial based on newly discovered evidence which he contended undermined the competency and credibility of two of the government's witnesses. After Jarrett's trial, it was discovered that a government witness, Lou Anne Walz, failed to testify truthfully at trial about her use of drugs on the date of the trial. She later admitted she had snorted THC before testifying at trial against Jarrett. Jarrett also argued that Ronald Brown's admitted occasional use of drugs weakens Brown's credibility as a witness against him.

The elements which must be established in order to obtain a new trial were articulated in *United States v. Nero,* 733 F.2d 1197 (7th Cir.1984). The defendant must demonstrate that the evidence (1) came to their knowledge only after trial; (2) could not have been discovered sooner had due diligence been exercised; (3) is material and not merely impeaching or cumulative; and (4) would probably lead to an acquittal in the event of a retrial. *Id.* at 1202 (citations omitted). *See also United*

*States v. Goodwin,* 770 F.2d 631, 639 (7th Cir.1985). For perjured testimony to form the basis for a new trial, three requirements must be met:

(a) The court is reasonably well satisfied that the testimony given by a material witness is false.

(b) That the jury might have reached a different conclusion.

(c) That the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial.

*Nero,* 733 F.2d at 1202; *United States v. Jarrett,* 705 F.2d 198 (7th Cir.1983).

It is within the discretion of the trial court to determine whether a new trial should be granted on the basis of newly discovered evidence. Accordingly, we will only reverse the district court where there has been an abuse of discretion. *Nero,* 733 F.2d at 1202; *United States v. Davis,* 604 F.2d 474, 483 (7th Cir.1979). The fact that Walz testified falsely as to her use or ingestion of drugs on the day she appeared as a witness against Jarrett is of itself insufficient to entitle Jarrett to a new trial where Walz's prior history of drug use was presented to the jury and where no evidence exists in the record to establish that Walz did not testify truthfully concerning Jarrett's participation in the Orange Blossom robbery. The evidence concerning Walz's history of drug use brought her credibility into question and the jury and the trial judge had ample opportunity to assess the credibility of her testimony in view of her demeanor and the responses she gave to the questions put to her by respective counsel. A witness' use of drugs is only relevant as to the ability of the witness to perceive the underlying events and testify lucidly at trial. *United States v. Leonard,* 494 F.2d 955, 971 (D.C. Cir.1974). Since there is no evidence in the record to establish that Walz testified falsely concerning Jarrett's participation in the Orange Blossom robbery, Jarrett's "newly discovered" evidence that Walz tes-

tified untruthfully as to her use of drugs on the day she testified is a collateral attempt to impeach Walz's testimony and is therefore merely cumulative with respect to the question of Walz's credibility concerning her use of drugs. Accordingly, Jarrett has failed to establish that the district court abused its discretion in denying Jarrett's motion for a new trial on the bais of newly discovered evidence.

Similarly, the newly discovered evidence of Ronald Brown's occasional drug use between 1976 and 1979 is not sufficient to entitle Jarrett to a new trial since such evidence does not call into question Brown's recall concerning the events he testified to. Brown testified that he did not use drugs at the time of the Orange Blossom robbery or at the trial itself. A witness's use of drugs may not be used to attack his or her general credibility, but only his or her ability to perceive the underlying events and testify lucidly at the trial. *See United States v. Leonard*, 494 F.2d at 971. Therefore, it is most doubtful that Jarrett would have been permitted to even utilize this information at trial. Even so, the mere fact that one of two accomplices who testified that Jarrett participated in the Orange Blossom robbery, occasionally used drugs, is merely impeaching since it only concerned the general character of the witness and is insufficient to result in an acquittal at a new trial.

The orders of the district court denying the defendant's motion to vacate his conviction and his motion for a new trial are affirmed.