**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Tyrone A. POINTER, Defendant–Appellant.**

Nos. 93–2571, 94–1161.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 13, 1994*.

Decided March 3, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied April 4, 1994.

---

* Appeal No. 94–1161 was submitted for decision without argument.

Chris R. Larsen, Asst. U.S. Atty., Milwaukee, WI (argued), for plaintiff-appellee.

David R. Saggio, Gerardo J. Hernandez (argued), Gonzalez & Saggio, Milwaukee, WI, for defendant-appellant.

Before CUMMINGS, ESCHBACH, and FLAUM, Circuit Judges.

ESCHBACH, Circuit Judge.

Defendant Tyrone Pointer appeals his convictions for taking a motor vehicle by force while possessing a firearm, 18 U.S.C. §§ 2, 2119, and for using and carrying a firearm during and in relation to the commission of a crime of violence. 18 U.S.C. §§ 2, 924(c). Pointer argues that he had ineffective trial counsel and requests a new trial based on the discovery of new evidence. We deny his request and affirm the district court.

In the early morning hours of November 21, 1992, Pointer and his co-defendant William Eskridge, Jr.,[1] robbed at gunpoint three women leaving the "Subs 'N Stuff" restaurant in Milwaukee. Immediately after robbing the three women, Pointer and Eskridge approached a fourth unlucky Subs 'N Stuff patron, Allan Rembert. As Rembert returned to his car from the restaurant, Eskridge cut him off, pointed a gun at him and told him to "strip." Rembert wisely obeyed and gave Eskridge his leather jacket containing the keys to his car. Meanwhile, Pointer approached Rembert from behind and helped him remove his shoes and his jewelry. Barefoot and no doubt cold, Rembert ran away, and Pointer and Eskridge drove off in his car with his jacket and jewelry. When the police recovered Rembert's car, it had been stripped of its tires, CD player, antenna, and high-rise grill.

Investigating the car-jacking, Milwaukee Police Officers Karen Waters and Michael Kurowski went to 2033 West Galena, apartment #3, to find Pointer, but Pointer was not there. However, a woman, James Ella Gaines, was in the apartment and allowed the officers to search the dwelling. During the search, the officers recovered Rembert's leather jacket and the high-rise grill taken from the front of Rembert's car. Ms. Gaines was also wearing a leather jacket later identified as belonging to one of the three women Eskridge and Pointer robbed earlier. The police subsequently arrested Pointer, who in turn made several statements to the police about the incident. Pointer did not testify at trial. The jury convicted Pointer for taking a motor vehicle by force while possessing a firearm, 18 U.S.C. §§ 2, 2119 (1992), and using and carrying a firearm during and in relation to the commission of a crime of violence. 18 U.S.C. §§ 2, 924(c) (1992).[2]

■ Pointer first argues that his trial counsel, David Saggio, was ineffective.[3] We note initially that Pointer failed to move for new trial in the district court, where ineffective assistance of counsel claims are best raised. *United States v. Booker*, 981 F.2d 289, 292 (7th Cir.1992). Because Pointer did not raise his ineffective assistance of counsel claim below, we could decline to hear his claim, thereby forcing him to raise it in a collateral proceeding in the district court. However, if the record is "sufficiently developed" so that we may adequately consider an ineffective assistance of counsel claim, we may resolve such a claim on direct appeal. *Id.; see also United States v. Mojica*, 984 F.2d 1426, 1452 (7th Cir.) (citing cases), *cert. denied sub nom. Castaneda v. United States*, — U.S. ——, 113 S.Ct. 2433, 124 L.Ed.2d 653 (1993). In this case, Pointer's allegations of ineffective assistance concern matters "sufficiently developed" in the record before us that we may resolve them here.

To establish constitutionally ineffective assistance of counsel, a defendant must show that his attorney's conduct fell below an objective standard of reasonable representa-

---

1. Eskridge and Pointer were tried together.

2. This was one of the first prosecutions under the new federal "car-jacking" law. 18 U.S.C. § 2119 (1992). The robbery of the three women is a separate state offense, not falling within federal jurisdiction.

3. Interestingly, David Saggio is also the signatory on the appellant Pointer's brief, evidently displeased with his own trial performance.

tion, and that but for counsel's deficient performance the result of the proceeding would probably have been different. *Strickland v. Washington*, 466 U.S. 668, 690–94, 104 S.Ct. 2052, 2066–68, 80 L.Ed.2d 674 (1984). Because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction," we presume counsel was competent absent strong evidence otherwise. *Id.* at 689, 104 S.Ct. at 2065.

■ Pointer points to two alleged failings of his trial counsel to support his claim of ineffective assistance of counsel. First, Pointer argues that his trial counsel should have objected to certain testimony of FBI Special Agent Paul Sorce as irrelevant and prejudicial. Agent Sorce testified that after he and arresting officers knocked on Pointer's door for a few minutes, Agent Sorce saw Pointer attempt to leave his apartment through a second story window at the back of his apartment. Pointer argues that this testimony led the jury "to assume [he was] escaping because he [was] guilty," and that the court would have excluded this testimony if only his attorney, Mr. Saggio, had objected to it.

Mr. Saggio's failure to object to Agent Sorce's testimony was within the bounds of reasonable representation. It is well established in this Circuit that " 'evidence of flight and concealment is admissible to show consciousness of guilt, as well as guilt itself.' " *United States v. Kord*, 836 F.2d 368, 372 (7th Cir.) (quoting *United States v. Zabic*, 745 F.2d 464, 471 (7th Cir.1984)), *cert. denied*, 488 U.S. 824, 109 S.Ct. 72, 102 L.Ed.2d 49 (1988). Pointer contends, however, that the standards reiterated in *Kord* for admitting evidence of flight were not met in this case. Whether or not *Kord* applies is not the issue here. The issue is whether Mr. Saggio's failure to object was within the bounds of reasonable representation. We believe it was. An objection to Agent Sorce's state-

ment would have drawn attention to the very testimony Pointer alleges is prejudicial, and *Kord* suggests that any objection might have been overruled. Therefore, it was within the bounds of reasonable trial strategy not to object and thereby downplay the significance of Agent Sorce's statements. Moreover, in light of the other evidence against Pointer, including other witness's testimony[4] and Pointer's own inculpatory statements to police,[5] it is unlikely that the result would have been different, even had Mr. Saggio successfully excluded this testimony. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; *Jarrett v. United States*, 822 F.2d 1438, 1442 (7th Cir. 1987).

■ Pointer also argues that his trial counsel should have moved for mistrial after a statement by Milwaukee Police Detective Eric Moore in response to a question during Eskridge's cross-examination. Eskridge sought to establish that Ms. Gaines, when first approached by police officers, told the officers that someone named "Derrick" or "Darren" had actually given her the leather coat she was wearing. The colloquy between Eskridge's attorney and Detective Moore went as follows:

Q: She [Ms. Gaines] gave you another suspect, correct?

A: What happened was I told her that we knew that her boyfriend Tyrone Pointer—

Q: Uh-hum.

A: —was involved in the taking of Mr. Rembert's car and the leather coats. She has a very long history with Mr. Pointer including a violent history—

MR. SAGGIO: Objection to lack of foundation.

THE COURT: Sustained.

Pointer argues that Mr. Saggio should have moved for mistrial because the state-

---

4. Mr. Rembert selected Pointer's photograph from a four-person photo array, and indicated to the police that Pointer looked like the person who took the rings from his fingers, although he admitted he could not be sure.

5. Pointer admitted he was at the scene of the crime, and admitted to riding off with Eskridge after he stole Rembert's car. He also admitted to obtaining the leather jackets and high-rise grill from Eskridge.

ment "I told her that we knew that her boyfriend Tyrone Pointer ... was involved in the taking of Mr. Rembert's car and the leather coats" was impermissible hearsay about material issues of fact. However, the officer's statement was not admitted for the purpose of establishing the truth of the matter asserted, namely, that Pointer was involved in the charged offense. Rather, Detective Moore's statement was in response to Eskridge's attorney's inquiry as to what the police officers asked Ms. Gaines. Therefore, the statement was not hearsay within the meaning of Rule 801(d)(1) of the Federal Rules of Evidence, and a mistrial would not have been warranted.[6] Even if this statement were inadmissible and as prejudicial as Pointer claims, in light of the other evidence against Pointer it is again unlikely that the result of the trial would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

█ Pointer also argues that the district court contributed to Mr. Saggio's ineffective assistance because the judge did not grant Mr. Saggio's motion to withdraw as counsel, made four days prior to trial. The district court did not abuse its discretion in denying Mr. Saggio's request to withdraw as counsel. *See, e.g., United States v. Cole,* 988 F.2d 681, 683 (7th Cir.1993). Not only is four days prior to trial a very late date to request a withdrawal, but neither Pointer nor Mr. Saggio pointed to anything, save vague allegations that he did not trust his lawyer and that his lawyer did not understand the case very well, as evidence that his lawyer should have been allowed to withdraw and new counsel substituted. *See, e.g., United States v. Morrison,* 946 F.2d 484, 498–99 (7th Cir. 1991), *cert. denied sub nom. Anderson v. United States,* —— U.S. ——, 113 S.Ct. 826, 121 L.Ed.2d 696 (1992). After listening to Pointer explain that he could probably try the case better than Mr. Saggio, Judge Evans properly explained to Pointer his option of proceeding *pro se,* which Pointer declined.

Because Mr. Saggio's request came at such a late date, and neither Mr. Saggio nor Pointer gave sufficient justification for the appointment of new counsel and delay of trial, we cannot find that the district court abused its discretion.

█ Finally, Pointer requests a new trial based on newly discovered evidence. While this appeal was pending, Pointer moved for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure, making the same argument in the district court that he makes on appeal. On December 22, 1993, the district court denied his motion. In Appeal No. 94–1161, Pointer appeals the district court's December 22 denial of his motion for new trial. We have decided to consolidate his second appeal of the district court's denial of his motion for new trial with his first appeal requesting a new trial in this Court. Therefore, we treat this as a review of the district court's denial of Pointer's motion. We review a denial of a Rule 33 motion for new trial for abuse of discretion. *United States v. Kaufmann,* 803 F.2d 289, 291 (7th Cir.1986), *cert. denied sub nom. Pruitt v. United States,* 493 U.S. 841, 110 S.Ct. 126, 107 L.Ed.2d 87 (1989). A new trial based on newly discovered evidence is warranted only if the new evidence: 1) becomes available only after trial; 2) could not have been discovered earlier with the exercise of due diligence; 3) is material and not cumulative; and 4) would probably lead to an acquittal. *Jarrett v. United States,* 822 F.2d 1438, 1445 (7th Cir.1987) (citing *United States v. Nero,* 733 F.2d 1197, 1202 (7th Cir.1984)). We find that Pointer's newly discovered evidence would probably not lead to an acquittal.

█ Pointer's new exculpatory evidence consists of a letter he received in prison from his "former girlfriend" James Ella Gaines, the same woman who permitted the police to search the apartment in which the stolen items were recovered. After apologizing to

---

**6.** Pointer argues that because the court sustained Mr. Saggio's objection the court agreed that the statement was impermissible hearsay. We note that Mr. Saggio's objection, sustained by the court, appears to concern the statement "[s]he

has a very long history with Mr. Pointer including a violent history," rather than the statement Pointer now contends is hearsay. Moreover, the objection was for lack of foundation, not because the statement was hearsay.

Pointer for getting him in deep trouble, Ms. Gaines stated in her letter that she should not have lied to the grand jury and the police, and that she should have told the police she was at the scene of the crime and did not see Pointer.[7] Her statements contradict her sworn statements to the grand jury.

There is initially some question about whether Pointer could have discovered this evidence prior to trial. Pointer had access to the grand jury transcripts and could have called Ms. Gaines as a witness to expose any falsehoods in her statements to the grand jury. Nevertheless, even if we agree that Ms. Gaines' letter might satisfy the first three requirements set out in *Jarrett*, it clearly would not lead to a new trial.

Ms. Gaines did not testify at trial, reducing the significance of her recantation. Moreover, the credibility of Ms. Gaines' letter is in grave doubt. Her letter was not a sworn affidavit, was written in rather suspect circumstances to a former boyfriend now in prison, and contradicts her prior sworn testimony. Finally, there was sufficient credible evidence linking Pointer to the scene of the crime, including witness identification and Pointer's own statements, to overcome any reasonable doubt Ms. Gaines' letter might have engendered. Therefore, we agree with the district court that the newly discovered evidence would not lead to an acquittal and therefore affirm.

AFFIRMED.

---

**7.** In her letter Ms. Gaines states "I only thought they would give you about 2 years to do." Evidently Pointer's 78–month sentence surprised Ms. Gaines.