UNITED STATES of America, Plaintiff,

v.

Philip DUCATO, Defendant.

No. 95 CR 189.

United States District Court,
N.D. Illinois,
Eastern Division.

July 1, 1997.

George Pappas, Neville, Pappas & Mahoney, Chicago, IL, Carl Peter Clavelli, Chicago, IL, for defendant.

Duane Deskins, Amy St.Eve, U.S. Atty's Office, Chicago, IL, for U.S.

## MEMORANDUM AND ORDER

MANNING, District Judge.

Defendant Philip Ducato ("Ducato"), through his counsel, moves this court for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure based on newly discovered evidence. For the reasons below, Defendant's motion for new trial is denied.

## BACKGROUND

Following a jury trial, Ducato was found guilty of conspiracy to distribute five kilograms of cocaine in violation of 21 U.S.C. § 846. The verdict was returned on July 18, 1996. Defendant was sentenced on December 20, 1996. The following summary of the factual background is taken from Defendant's Motion for New Trial, Government's Opposition to Defendant's Motion, trial transcripts, and exhibits.

On January 27, 1995, Ducato was arrested for conspiracy to distribute cocaine and possession with intent to deliver cocaine. Also arrested was co-defendant Antonino Cusimano ("Cusimano"). The arrest was the result of a Drug Enforcement Agency ("DEA") surveillance operation. At trial, two key Government witnesses testified against Ducato. These witnesses were Philip Bruno ("Bruno") and Nassir or Naser "Victor" Bustami ("Bustami"). Bustami was involved with the instant DEA operation acting as a confidential informant. Bustami's involvement stemmed from his plea agreement with the Government regarding unrelated charges and sentencing matters. Bustami agreed to testify against Ducato and Cusimano in exchange for a downward departure in sentencing. Bruno made a similar agreement following his arrest in this matter, exchanging his testimony against Defendant at trial for a sentence mitigation.

The weight of evidence against Ducato was overwhelming at trial. Such evidence included direct testimony from Bruno and Bustami, several audio tapes indicating Ducato's perpetration of the conspiracy, including one audio tape of Ducato himself, testimony by DEA agents who had witnessed meetings between Defendant, Cusimano, Bruno, and Bustami, and evidence of Defendant's possession of a loaded weapon and $90,000 drug money (received from an undercover DEA agent) at the time of arrest. Defendant's motion, however, focuses solely on the testimonial evidence of Bruno and Bustami, an issue on which the court has previously ruled in Defendant's prior motion for a new trial.

Bustami was effectively impeached at trial by both Defense and Government counsel. The impeachment of Bustami revealed that he trafficked drugs, plead guilty to federal drug charges, laundered money, made a plea agreement in the instant case, to wit: trading his testimony for a reduced sentence, was arrested for carrying a weapon in Florida, was arrested in Wisconsin for automobile theft, and so on. Bruno, likewise, was impeached by both sides. Bruno admittedly participated in the same conspiracy as Ducato, made a plea agreement in the instant case trading his testimony for a sentence mitigation, did not disclose all truthful information immediately following his arrest in this matter, accepted bribes from Chicago Transit Authority employees, falsified court documents and passport applications, laundered money, and so on.

Defendant's motion for new trial is based on claims that "one or both of the cooperating Government witnesses [Bruno and/or Bustami] testified falsely at the trial below." Moreover, Defendant claims that the Government failed to disclose alleged wrongdoings of these Government witnesses in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). This alleged undisclosed information. claims Defendant, would have aided the defense in additional impeachment of these Government witnesses.

## ANALYSIS

Ducato moves this court for a new trial under Rule 33 of the Federal Rules of Criminal Procedure. The court may grant a motion for new trial "if required in the interest of justice." Fed.R.Crim.P. 33. However,

such motions "are not favored by the courts and are viewed with great caution." *United States v. Kamel*, 965 F.2d 484, 490 n. 7 (7th Cir.1992) (collecting cases). There exists a strong hesitation "before setting aside a jury verdict and ordering a new trial." *United States v. Ghanayem*, 1994 WL 247069, *2 (N.D.Ill.1994) *citing Id.* When confronted with a motion for a new trial based upon newly discovered evidence under Federal Rule of Criminal Procedure 33, "[C]ourts exercise great caution ... because of the importance accorded to repose, regularity of decision-making, and conservation of judicial resources." *United States v. Young*, 20 F.3d 758, 763 (7th Cir.1994) *citing United States v. Kamel*, 965 F.2d 484, 490 (7th Cir.1992). In that connection, the Seventh Circuit "has established a four-part test a defendant must satisfy to establish his right to a new trial." *Id.* The defendant must demonstrate that the evidence "(1) came to [his] knowledge only after trial; (2) could not have been discovered sooner had due diligence been exercised; (3) is material and not merely impeaching or cumulative: and (4) would probably lead to an acquittal in the event of a retrial." *Id.* quoting *Jarrett v. United States*, 822 F.2d 1438, 1445 (7th Cir.1987). *See also United States v. Nero*, 733 F.2d 1197 (7th Cir.1984); *United States v. Oliver*, 683 F.2d 224, 228 (7th Cir.1982).

Ducato's motion is advanced in two parts relating to: 1) Government witness Bustami and 2) Government witness Bruno. Ducato alleges that Bustami committed perjury; that the newly discovered evidence proves as such; and that the Government, in violation of Defendant's due process rights, failed to disclose exculpatory information to the defense. Defendant also alleges that newly discovered evidence is available to further impeach Bruno's credibility, and to show that Bruno committed perjury.

Defendant's motion states that "[w]hen the claim incorporates an allegation that the witness(es) testified falsely, as here, a 'more lenient test' is utilized." The "more lenient test" Defendant describes derives from *Larrison v. United States*, 24 F.2d 82, 87–88 (7th Cir.1928) and, more recently, *United States v. Reed*, 2 F.3d 1441 (7th Cir.1994). *See also*

*United States v. Mazzanti*, 925 F.2d 1026, 1029 (7th Cir.1991). The prerequisite to utilizing the "*Larrison* test" is that the court is "reasonably well satisfied" that there was false testimony. *See Id. See also United States v. Austin*, 103 F.3d 606, 609 (7th Cir. 1997). Following this "threshold factual determination," the court then considers whether a "jury might have reached a different conclusion absent the false testimony [or if it had known that testimony by a material witness was false] and [ ] whether the party seeking the new trial either was surprised by and unable to meet the false testimony or did not learn of its falsity until after trial." *See Id.; United States v. Reed*, 2 F.3d 1441 (7th Cir.1994); *United States v. Mazzanti*, 925 F.2d 1026, 1029 (7th Cir.1991). There is no reason to pursue the elements of the *Larrison* test as it is clear from the record that Ducato was not convicted on the basis of false testimony. The court is not "reasonably well satisfied" that either Bustami or Bruno testified falsely at trial, nor is it reasonably satisfied that a "jury might have reached a different conclusion" without Bustami and Bruno's testimony if, in fact, their testimony had been false. As is more specifically set forth below, Ducato does not satisfy the Seventh Circuit's general test, either. Applying the principles set forth above to the instant case, Defendant's motion for new trial based on newly discovered evidence is denied.

## I. Government Witness Bustami

■ Ducato's motion for new trial is based on "newly discovered" evidence that Bustami gave false testimony in the instant case. Bustami, at trial, gave testimony that placed Ducato at "deal" meetings and corroborated other evidence proving Ducato's involvement in a conspiracy to distribute five kilos of cocaine. Most importantly, in his motion, Ducato notes that Bustami, on direct-examination, claimed to have had a "very limited involvement in drug deals, mostly as a broker, and only with cocaine." Bustami explained that his involvement was limited to six transactions with two suppliers. Moreover, "Bustami emphasized that he fully disclosed all his knowledge and all the names of those he was aware were involved in drug

dealing ... [and] he further advised the jurors that his failure to be truthful would void his plea agreement." Defendant's motion for new trial also avers that on cross-examination, Bustami "declared that his family had a bad experience with drugs and that they were taboo for [his] family," that he "was not going to get involved in any of that stuff, ... yet for whatever stupid reasons" he admitted that he had.

Defendant argues that Bustami committed perjury. Defendant was sentenced on December 20, 1996. Ducato claims that in March, 1997, new, material evidence was discovered, to wit: "a series of interviews ostensibly occurring as early as October, 1996, in which members of the prosecutor's office had interviewed an individual named Mohammed 'Mike' Bustami ('Mike')." In relevant part, during said interviews, Mike, Bustami's cousin or uncle, allegedly told prosecutors in an unassociated investigation, that Bustami had aided him in supplying and delivering heroin between November, 1991 and April, 1992. Defendant argues that these conversations with Mike should have been turned over to the defense as it was "material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963). The nature of the allegedly false testimony is that Bustami lied when he declared at trial that he had only a "very limited involvement in drug deals ... limited to six transactions and two suppliers ... and only with cocaine." Ducato argues that Mike's statements taken between October, 1996, and February, 1997, indicate that "[B]ustami assisted Mike [in supplying] heroin between November, 1991, and April, 1992, and actually delivered one kilo of heroin...." Ducato insists on finding untruth in Bustami's declarations and admissions. Assuming *arguendo* that Mike's statements are true, they corroborate Bustami's alleged "limited involvement." Nothing is proffered to indicate Bustami's limited involvement did not include the period between November, 1991, and April, 1992, nor that such involvement was only one of his admitted six transactions, nor that Mike, himself, was one of the two suppliers Bustami admitted to "dealing" with. The only sting in Ducato's allegations is drawn from Bustami's admission that he only dealt with cocaine. If it is true, as Mike claims, that Bustami had engaged in heroin transactions and delivered one kilo of heroin, then some suspicion may be had of Bustami's testimony. Defendant's motion states that according to Mike, Bustami "[a]ctually delivered one kilo of heroin at a time when Mike was overseas." Bustami made several admissions at trial including, in part, the following: Bustami trafficked drugs, plead guilty to federal drug charges, laundered money, made a plea agreement in the instant case trading his testimony for a reduced sentence, was arrested for carrying a weapon in Florida, and arrested in Wisconsin for automobile theft. Even assuming that the evidence (1) came to [the Defendant's] knowledge only after trial and (2) could not have been discovered sooner had due diligence been exercised, the Defendant cannot demonstrate that the evidence (3) is material and not merely impeaching or cumulative. *See Jarrett v. United States,* 822 F.2d 1438, 1445 (7th Cir.1987). With such a deluge of impeaching testimony and admissions at trial, elicited by both the Defendant and Government, whether Defendant knew that he was delivering *heroin,* which was "concealed inside a books" reaches only to the depths of further impeachment on issues Bustami openly conceded. To prod the possibility of further impeachment would result in no more than cumulative impeachment to no further purpose. The jury considered all of Bustami's testimony and still found cause to find Ducato guilty of conspiracy to distribute cocaine. For these reasons alone, the Defendant has failed to advance sufficient evidence to satisfy the third prong of the Seventh Circuit's substantive test for a new trial based on newly discovered evidence. In addition, even if Ducato could have drawn the alleged contradiction of having never dealt with heroin, the purpose served is merely to further impeach Bustami's credibility, "rather than shed light on a material issue in the case; as a result, this evidence would be essentially cumulative, since [Bustami's] credibility was attacked throughout the course of the trial, as discussed" above and further below. *United States v. Fruth,*

36 F.3d 649, 652–53 (7th Cir.1994). As a result, Ducato is not entitled to a new trial.

Even applying the *Larrison* test, and assuming, which this court is not convinced, that Bustami testified falsely, there is no cause to find "that a jury might have reached a different conclusion absent the false evidence." *United States v. Austin,* 103 F.3d 606, 609 (7th Cir.1997). As stated, the jury knew the abundant shortcomings of Bustami and still found Ducato guilty of conspiracy to distribute cocaine. What is notable about this decision is the fact that this same jury, based on all of the same testimony and evidence, including circumstantial evidence from DEA agents, tape recorded conversations, other surveillance evidence, evidence of Ducato's possession of an armed weapon and $90,000 of drug money at the crime scene, and so on, found Ducato *not guilty,* of possession with intent to deliver cocaine. Clearly, the jury made a creditable assessment of Bustami's testimony, character, etc. in its findings.

■ Ducato further complains that his defense was impeded because the Government failed to disclose the Memorandum of Interviews and conversations with "Mike." The interviews were taken between October, 1996, and April, 1997. as discussed above. These interviews were conducted by prosecutors in an altogether unrelated case. According to Ducato's motion for new trial, such nondisclosure violated Ducato's due process rights under *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1963) and *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972).

In *Brady,* the United States Supreme Court held that due process requires the Government to provide, upon request, "any evidence favorable to the accused which is material either to guilt or punishment." *Brady v. Maryland,* 373 U.S. 83, 87–88, 83 S.Ct. 1194, 1197, 10 L.Ed.2d 215 (1963). *See also United States v. Gonzalez,* 93 F.3d 311, 315 (7th Cir.1996); *United States v. Veras,* 51 F.3d 1365 (7th Cir.1995). Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding

would have been different." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). According to the *Bagley* Court, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome [of the trial.]" *Id.* at 682, 105 S.Ct. at 3383. In *Kyles v. Whitley,* 514 U.S. 419, 434, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995), the Court noted that "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."

This obligation to disclose material evidence under *Brady* includes evidence that affects a government witness' credibility. *See Giglio v. United States,* 405 U.S. 150, 153, 92 S.Ct. 763, 765, 31 L.Ed.2d 104 (1972). The *Brady* court noted that the government's obligation to disclose favorable evidence is "irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963). In *Giglio,* the Court held that when the reliability of a given witness may be determinative of guilt or innocence, suppression of such material evidence constitutes a violation of the due process clause and justifies a new trial. *See Giglio v. United States,* 405 U.S. 150, 153, 92 S.Ct. 763, 765, 31 L.Ed.2d 104 (1972) *noting Napue v. Illinois,* 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959).

The interviews at issue were given on 18 separate dates between October, 1996, and February, 1997. The jury in the instant case returned a verdict on July 18, 1996. Defendant argues that had the interviews been made available to the Defense, it would have been in a better position to impeach Bustami. Of course, these interviews had not been given until after Ducato's trial.

■ To have a new trial granted on a *Brady* claim, Ducato must show three elements: 1) that the evidence in question was favorable, 2) the evidence was suppressed, and 3) the evidence was material to the case. *See United States v. Dimas,* 3 F.3d 1015, 1017 (7th Cir.1993). *See also United States*

*v. White,* 970 F.2d 328, 337 (7th Cir.1992). The evidence, being addressed in the discussion of "newly discovered" evidence above, may well be favorable to some limited degree for cumulative impeachment purposes; however, Ducato cannot maintain that the evidence was suppressed by the Government at or before trial where the evidence was not gathered until after trial. In addition the subject matter of the interviews was not related to the instant case. Ducato argues that "if this information was known within the prosecutor's office prior to sentencing, this and all relevant information pertaining to Bustami should have been formally disclosed at that time...." However, Ducato offers nothing to support that the Government indeed knew of the interviews, or their contents. The court is not convinced that the Government did know about the interviews at the time of trial, or even prior to sentencing, and even if the Government had known of the contents on or before December 20, 1996, the date of sentencing, there is no indication that the interviews up to that date were memorialized or included any information contrary to Bustami's testimony given several months earlier.

It is well-settled in our circuit that "[L]ater developments ..., if any, are irrelevant because the question is whether the result would have changed if the prosecutors disclosed the evidence at the time, not whether the outcome would differ if the case were tried today." *United States v. Dimas,* 3 F.3d 1015, 1019 n. 3 (7th Cir.1993). "[T]he *Brady* analysis [is] limited to evidence known at the time of the trial." *United States v. Veras,* 51 F.3d 1365, 1375 (7th Cir.1995). Moreover, the "Seventh Circuit limits this court's *Brady* analysis to the effect of the allegations which the government knew and failed to disclose at trial." *United States v. Veras,* 860 F.Supp. 471, 479 (N.D.Ill.1994) *aff'd* 51 F.3d 1365 (7th Cir.1995). The interviews at issue and the allegations made against Bustami are relevant only to Ducato's claim of newly discovered evidence and do not reach due process violations under *Brady.* Without further discussion of its prior analysis, tie court finds that Ducato cannot show that the evidence sought was suppressed by the Government at or before trial or that the evidence

was material to the defense at trial or in the sentencing phase. Moreover, there is no "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). Without such evidence, in this case, it cannot be said that Ducato received an unfair trial. *See Kyles v. Whitley,* 514 U.S. 419, 434–36, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995). Besides, "for purposes of the government's obligations under *Brady* and its progeny, it is axiomatic that the government need not disclose information that does not come into existence until after trial." *United States v. Boyd,* 833 F.Supp. 1277, 1297 n. 28 (N.D.Ill.1993) *aff'd* 55 F.3d 239 (7th Cir.1995).

Defendant also suggests that Bustami fled the county in violation of his bond on an unrelated matter and "[a]t a retrial of [Ducato's] charges, Bustami would be confronted with his recent flight as evidence of his consciousness of guilt of having committed the offense of perjury [at Ducato's trial]...." Defendant states in his motion that an arrest warrant was issued on December 6, 1996 for Bustami's failure to appear. Again, the jury returned its verdict on July 18, 1996. Even if Bustami's flight from justice was related to this supposed consciousness of guilt of having testified falsely at Ducato's trial, an untenable inference at best, it is again merely impeaching material. To suggest that the court retry defendants every time an adverse witness crosses a legal line after a verdict has been rendered, and for the purpose of further impeaching that adverse witness' character and credibility, would be tantamount to establishing a revolving door in courtrooms throughout this country with no end or finality in sight.

Defendant's motion also suggests that newly discovered evidence involving Bustami's alleged automobile theft in Wisconsin ought to be considered by this court as further evidence to impeach Bustami. Defendant raised this same issue in a prior co-Defendant's Motion for New Trial, orally joined in by Defendant Ducato. The court ruled once on that issue and will not revisit

the issue. There exists nothing else of import in the Defendant's motion relative to Bustami.

## II. Government Witness Bruno

■ Defendant Ducato also moves this court for a new trial based on "newly discovered" evidence allegedly showing that Government witness Philip Bruno was invoked in an unrelated conspiracy to defraud one Helen Baim some time prior to the instant trial. According to Defendant, this "scheme" involved a man named Glenn Caithamer who is described, by Defendant, as an "unscrupulous insurance agent and huckster." Defendant alleges that after trial in the instant case, certain evidence came to light that Bruno and Caithamer devised and completed the following scheme: Caithamer, acting as an insurance agent to Ms. Baim, told Ms. Baim that he owed Bruno $42,000 in loans. In an effort to help Caithamer, Ms. Baim agreed to write checks to the order of Bruno as "good faith" that Caithamer would indeed pay off his debt to Bruno. Ms. Baim, however, understood only that Bruno would "bold and not negotiate the checks." Bruno "duly endorsed" the checks and discovered the accounts held insufficient funds. Bruno subsequently sued Ms. Baim Caithamer, and Caithamer's wife. A default judgment for $42,000 was entered against Ms. Baim. Bruno sought garnishment of Ms. Baim's Merrill Lynch cash account. The garnishment was served on March 4, 1995.

Defendant proffers that as Ms. Baim's insurance agent, Caithamer knew of the Merrill Lynch account. With this information, claims Defendant, "Caithamer's disclosure of this account information to Bruno is strong evidence of their complicity in a scheme against Helen Baim...." On February 20, 1997, Caithamer entered a plea of guilty for defrauding several former insurance clients "none of whom are named in the charge." Defendant, without foundation, assumes that one of the "several former insurance clients" defrauded, in fact, included Ms. Baim. At trial, Bruno was confronted on cross-examination with his involvement with Caithamer and a promissory note in the amount of $41,000. Bruno testified that Caithamer

owed Bruno that sum for a series of small loans advanced over a several year period. Bruno also admitted to having filed suit against Caithamer, his wife, and Helen Baim to recover that debt. At trial, Bruno never admitted to or denied any part of a scheme to defraud. Bruno, did however, discuss that Caithamer owed him money; Ms. Baim wrote him checks in Caithamer's behalf, the checks could not be drawn from insufficient funds; and he filed suit against Caithamer, his wife, and Ms. Baim for full recovery of the debt.

Defendant alleges that had more information been available to him regarding Caithamer and Bruno's relationship, Bruno would have had to provide [at trial] an explanation of his lawsuit against Helen Baim [and] demonstrate how he became aware of her [Merrill Lynch] retirement account.... Defendant suggests that this further impeachment would have been levelled against Bruno in the wake of an alleged discrepancy between Bruno and Bustami This discrepancy is as follows: Bustami claims that his discussions with Ducato began in November, 1994. In January, 1995, Bustami and Ducato discussed the sale of one kilo of cocaine. Bruno, however, claims that Ducato had spoken about delivering five kilos of cocaine to Bustami "as early as March and April, 1994."

As discussed previously, the Seventh Circuit has established a four-part test that a defendant must satisfy to establish his right to a new trial. *See United States v. Young,* 20 F.3d 758 (7th Cir.1994); *United States v. Kamel,* 965 F.2d 484, 490 (7th Cir.1992). The defendant must show, initially, that the evidence came to the defendant's knowledge "only after trial." *Id. quoting Jarrett v. United States,* 822 F.2d 1438, 1445 (7th Cir. 1987). Part two of the test requires that the evidence "could not have been discovered sooner had due diligence been exercised." *Id.*

At trial, Defense counsel confronted Bruno on the existence of the $41,000 promissory note and Bruno's relationship with Caithamer. Defense counsel questioned Bruno about the alleged loan made to Caithamer, how much was owed, for what reasons, etc. Also, Defense counsel, during voir dire, questioned

Bruno on his ability to be paid on the note which Bruno replied "[I] had to take him (Caithamer) to court." Continuing on cross-examination, Defense counsel asked further questions about the lawsuit to collect on the debt. Bruno replied that he had filed the lawsuit in Cook County, downtown, and the defendants to the suit included Caithamer, his wife, and Helen Baim.

Ducato's counsel, at trial, knew of the debtor-creditor relationship between Caithamer and Bruno, that a promissory note was in existence, and that Bruno had some difficulty collecting the debt. The record indicates that Bruno filed the lawsuit against Caithamer and Baim "almost a year before defendant Ducato's trial." Defendant had ample time to discover the lawsuit files and conduct reasonable investigations and interviews necessary to uncover favorable evidence in this matter. An interview with Helen Baim could have been conducted long before the instant trial. As such, Defendant cannot show that the evidence "could not have been discovered sooner had due diligence been exercised." *United States v. Young*, 20 F.3d 758, 763 (7th Cir.1994) *quoting Jarrett v. United States*, 822 F.2d 1438, 1445 (7th Cir.1987).

Defendant refers to an affidavit dated April 15, 1997, in which it is stated that "[a]t a meeting in a restaurant with Philip Bruno and Glenn Caithamer, [Baim] was told the check she gave for $42,000 would be held and not negotiated." Defendant infers that Bruno's alleged presence at this alleged exchange demonstrates Bruno's involvement in a scheme to defraud Ms. Baim. Even assuming that this information was not discoverable by even marginal diligence on Defendant's part, this information, and the whole line of inquiry seeking to further impeach Bruno's credibility, amounts to no more than "merely impeaching or cumulative" evidence. *Id.* That being the case, Defendant cannot satisfy prong three of the Seventh Circuit's test for the granting of a new trial based on newly discovered evidence. It is also clear that in light of the overwhelming impeachment of Bruno, and the display of other inculpatory evidence in this case, that this "newly discovered" evidence would not

"probably lead to an acquittal in the event of a retrial." *Id.* Thus, the fourth prong that must be shown by a defendant to gain a new trial cannot be met.

Any assertion by the Defendant that the exchange at trial between Defense counsel and Bruno, wherein Bruno discussed the promissory note, the debt history, and the subsequent lawsuit was the basis for perjury, the Defendant offers nothing of substance to support the claim. Assuming *arguendo* that the allegations of perjury are true, and the "more lenient" *Larrison* test is applied, the Defendant still could not meet each requirement of the *Larrison* test. Even if the court believed Bruno falsely testified on this issue, such false testimony presented against the weight of all of the other evidence would not reasonably cause a jury to reach "a different conclusion absent the false evidence." *See United States v. Austin*, 103 F.3d 606, 609 (7th Cir.1997). *See also Larrison v. United States*, 24 F.2d 82, 87–88 (7th Cir.1928).

Ducato's *Brady* claim cannot stand, either, for even if evidence regarding the relationship between Bruno and Caithamer was suppressed, which no evidence exists to substantiate such a claim, the Defendant cannot show that it was material. *See United States v. Dimas*, 3 F.3d 1015, 1017 (7th Cir. 1993). There is no "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985).

The court acknowledges that the Government's case certainly depended on the testimony of Bustami and Bruno. However, their testimony was only part of an overwhelming case against Ducato. In addition to Bustami and Bruno's "insider" testimony, the Government presented several DEA agents to testify as to the actions of Ducato observed under surveillance, a tape recorded conversation of Ducato himself, as well as co-defendant Cusimano speaking about Ducato's involvement in the conspiracy, evidence of Ducato receiving $90,000 in drug money from an undercover DEA agent and being in possession of a firearm in his automobile in close proximity to the payoff, and seeking to go to the auto-

mobile immediately prior to the arrest and immediately subsequent to the tender of the money by the undercover officer. Defendant seeks a new trial to further impeach Bustami and Bruno. At trial, and orchestrated by all Defense counsel, as well as the Government's attorneys, a "blistering" examination of Bustami revealed that Bustami trafficked drugs, plead guilty to federal drug charges, laundered money, agreed to a plea arrangement where he would trade his testimony in the instant trial for a reduced sentence, was convicted for misdemeanor false advertising, was arrested for carrying a weapon in Florida, was arrested for automobile theft in Wisconsin, and made false representations on IRS forms, among other admissions. Bruno suffered a similar "blistering." Bruno admitted to participating in the instant conspiracy, made an agreement to testify in the instant trial in exchange for a mitigated sentence, failed to disclose all truthful information in the instant case immediately following his arrest in this matter, laundered money, falsified court papers and passport documents, accepted bribes at the Chicago Transit Authority, etc.

Defendant's motion for a new trial is founded on hope to further impeach Bruno and Bustami. The damage has been done. Any further impeachment would be cumulative and would reach no material ground. Moreover, there exists no reasonable probability that a jury would decide this case differently had this further cumulative impeachment been shelled upon the already levelling examination of these witnesses. The damage had certainly been done, and accounted for, as is clear where the jury split its decision finding Ducato guilty of conspiracy to distribute cocaine and not guilty of possession with intent to deliver cocaine. As to Defendant's *Brady* claims relating to both Bruno and Bustami, simply, a fair trial was received, no reasonable probability exists that had the evidence been disclosed the result of the proceeding would have been different; and the newly discovered evidence proffered does not undermine the confidence of the outcome.

## CONCLUSION

For all the foregoing reasons, Defendant Ducato's motion for a new trial based on newly discovered evidence is denied.